## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

| | |
|---|---|
| JOE ANDREW SALAZAR, | |
| Plaintiff, | |
| v. | Civil Action No. 5:19-cv-75 |
| AT&T MOBILITY LLC, SPRINT/UNITED MANAGEMENT COMPANY, T-MOBILE USA, INC., AND CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, | DEMAND FOR JURY TRIAL |
| Defendants. | |

**PLAINTIFF JOE ANDREW SALAZAR'S RESPONSE IN OPPOSITION TO AT&T MOBILITY, LLC, SPRINT/UNITED MANAGEMENT COMPANY, T-MOBILE USA, INC., AND CELLO PARTNERSHIP D/B/A VERIZON WIRELESS' MOTION TO <u>DISMISS UNDER RULE 12(b)(6)</u>**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION …………………………………………….....................................1-2

II.    ARGUMENT……………………………………………….....................................2-19

    A.    Defendants have failed to establish that the requires claim preclusion elements are satisfied. ……………………………………..............................................2-17

        1.    This case does not involve the same claim or cause of action as the HTC Corp. litigation. ……………………………………….....................3-10

            a.    The two cases do not share the same nucleus of operative facts and arise from transactional facts that are unrelated in time, space, origin or motivation. …………………………………………....4-5

            b.    HTC Corp. admits that the two cases do not share the same nucleus of operative facts. …………………………………….......5-8

            c.    The two cases do not share the same nucleus of operative facts because the treatment of the cases as a unit does not conform to the parties' expectations or business understanding or usage……….9

        2.    HTC Corp. and the U.S. carriers are not in privity……………..…-10-16

            a.    HTC Corp.'s efforts to distance itself from Defendants and its decision to sever AT&T from the first case establishes that there is no privity. ……………………………………….................12-13

            b.    There is no privity because HTC Corp. attempted to conceal its relationship with Defendants at the relevant times in the first litigation. ……………………………………….................13-14

            c.    There is no privity because HTC Corp. did not adequately represent Defendants' interests in the first case…………….14-15

            d.    Even if Defendants could establish privity with HTC Corp., their arguments should be barred by judicial estoppel……………15-16

    B.    The application of claim preclusion in this case would clearly prejudice Salazar...……………………………………..............................................16-17

    C.    The *Kessler* doctrine does not apply in this case……………………………18-19

III.      CONCLUSION ……………………………………….......................................19-20

## TABLE OF AUTHORITIES

### CASES

*Acumed LLC v. Stryker Corp.*, 525 F.3d 1319 (Fed. Cir. 2008). ................................................. 3, 4

*Aerojet–General Corp. v. Askew*, 511 F.2d 710 (5th Cir. 1975) .................................................. 16

*Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045 (Fed. Cir. 2014)............................................. 18, 19

*Davis v. Wakelee*, 156 U.S. 680 (1895) ...................................................................................... 16

*Feuerbacher v. Wells Fargo Bank*, No. 4:15-CV-59, 2016 WL 3669744 (E.D. Tex. July 11, 2016) ........................................................................................................................................... 6

*Hansberry v. Lee*, 311 U.S. 32 (1940) ......................................................................................... 10

*Hous. Prof'l Towing Ass'n v. City of Hous.*, 812 F.3d 443 (5th Cir. 2016)................................ 2, 3

*HRD Corp. v. Dow Chem. Co.*, 2019 WL 162094 (S.D. Tex. Jan. 9, 2019) ................................ 16

*In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999) ...................................................... 15, 16

*In re Johnson*, 518 F.2d 246 (10th Cir. 1975) .............................................................................. 6

*Kessler v. Eldred*, 206 U.S. 285 (1907). ...................................................................................... 18

*Lia v. Saporito*, 909 F. Supp. 2d 149 (E.D.N.Y. 2012) ............................................................... 6

*Maitland v. Univ. of Minn.*, 43 F.3d 357 (8th Cir. 1994)............................................................. 6

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983 (9th Cir. 2012).............. 6

*New Hampshire v. Maine*, 532 U.S. 742 (2001)........................................................................... 16

*Petro–Hunt, L.L.C. v. United States*, 365 F.3d 385 (5th Cir. 2004) .......................................... 4, 9

*Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598 (S.D. Tex. 2010) ........ 16, 17

*Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 960 F.2d 1286 (5th Cir. 1992) ...... 10, 11, 13, 14

*Russell v. SunAmerican Sec., Inc.*, 962 F.2d 1169 (5th Cir. 1992)............................................. 10

*S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 567 F. App'x 945 (Fed. Cir. 2014) ............. 11, 13

*SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160 (Fed. Cir. 2018).................................................. 18

*SpeedTrack Inc. v. Office Depot, Inc.*, 791 F.3d 1317 (Fed. Cir. 2015) ...................................... 18

*Stearns Airport Equip. Co. v. Revolving Media, Ltd.*, 1996 WL 722073 (N.D. Tex. Dec. 6, 1996) ................................................................................................................................................... 10

*Sw. Airlines, Inc. v. Tex. Int'l Airlines, Inc.*, 546 F.2d 84 (5th Cir. 1977)............................ 10, 14

*Taylor v. Sturgell*, 553 U.S. 880 (2008)................................................................... 11, 14, 15

*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2005).......................................... 3

*Texas v. Dep't of Labor*, 929 F.3d 205 (5th Cir. 2019) .................................................. 11, 12, 14

*Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298 (Fed. Cir. 2007).......................... 11, 13

*Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665 (5th Cir. 2003) ................................. 10, 11

*Xiaohua Huang v. Huawei Techs. Co.*, 2019 WL 1246260 (E.D. Tex. Feb. 12, 2019) ................. 3

*Young Eng'rs, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305 (Fed. Cir. 1983) ........................ 4

### STATUTES AND RESTATEMENTS

35 U.S.C. § 271 (a) ...................................................................................................................... 2

Restatement (Second) of Judgments § 24(2) ............................................................................... 4

Restatement (Second) of Judgments § 26(f)................................................................................. 16

Plaintiff Joe Andrew Salazar ("Salazar") submits this Opposition in response to AT&T Mobility LLC ("AT&T"), Sprint/United Management Company ("Sprint"), T-Mobile USA, Inc. ("T-Mobile"), and Cellco Partnership d/b/a Verizon Wireless ("Verizon") (collectively, "Defendants" or "U.S. carriers")'s Joint Motion to Dismiss Under Rule 12(b)(6) ("Motion," Dkt. #27). For the following reasons, Plaintiff respectfully requests the Court deny Defendants' motion in its entirety.

## I.    INTRODUCTION

Defendants' Motion should be denied because Defendants have failed to establish the requirements for claim preclusion are met—specifically, that this case (1) involves the same claim or cause of action or that (2) the parties are in privity. Additionally, the *Kessler* doctrine is wholly inapplicable to the instant dispute.

The fact that Plaintiff's case against HTC Corp.[1] ("HTC Corp. litigation" or "first case") involved a separate claim or cause of action than the present case was a prominent and consistent theme to HTC Corp.'s defense in the first case. There, HTC Corp.—a Taiwanese entity—took the position that it was not liable for infringement because it did not commit any acts giving rise to infringement within the U.S. HTC Corp. carried this defense throughout litigation including in its interrogatory responses (where it argued Plaintiff was suing the wrong party), motion to sever (where it, along with AT&T,[2] successfully thwarted Plaintiff's attempt to add AT&T to the case), motion for summary judgment (where it argued there was no issue of material fact supporting Salazar's claim HTC Corp. made sales to Sprint within the U.S.), and throughout trial.

---

[1] *Salazar v. HTC Corporation*, 2:16-cv-01096-JRG (E.D.Tex.).

[2] AT&T filed a Partial Joinder to HTC Corp.'s Motion to Sever.  *See* Section 2.A.1.a-c, *infra*.

HTC Corp.'s self-serving strategies adopted at the expense of Defendants make clear that the Defendants are not in privity with HTC Corp.  Such strategies included:

- HTC Corp.'s defense it was not liable because its actions did not occur within the U.S. while explicitly admitting that the U.S. carriers' actions did;

- failing to ensure there was a jury verdict question that would have protected the U.S. carriers from liability—specifically whether the accused devices practiced the claim elements of Salazar's patent claims—as opposed to the question of whether HTC Corp.'s "sales"[3] occurred within the U.S. to constitute infringement under U.S. law; and

- abandoning its invalidity counterclaim at trial when the jury came back with a verdict relieving HTC Corp. from liability.

The factual record, and HTC Corp.'s own admissions,[4] establish that Salazar's infringement case against the U.S. carriers is properly before this Court.  Because Defendants have not met their burden of establishing that claim preclusion or the *Kessler* doctrine bar this case, Salazar respectfully requests that the Court deny Defendants' Motion in full.

## II.    ARGUMENT

### A.    Defendants have failed to establish that the required claim preclusion elements are satisfied.

Four elements must exist for an action to be barred by claim preclusion: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions."  *Hous. Prof'l Towing Ass'n v. City of Hous.*, 812 F.3d 443, 447 (5th Cir. 2016) (internal quotation marks and citation

---

[3] 35 U.S.C. § 271 (a) provides: "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

[4] Defendants claim that they are in privity with HTC Corp. and that HTC Corp. is their virtual representative.  Therefore, admissions by HTC Corp. are to be deemed made by the Defendants. Section II.A.2.d, *infra*.

omitted).  Defendants have not met their burden of establishing that all of these requirements are satisfied, and claim preclusion is therefore improper.

### 1.    This case does not involve the same claim or cause of action as the HTC Corp. litigation.

The same claim or cause of action is not involved in both actions, and this requirement is therefore not met.  Contrary to Defendants' assertion, claim preclusion does not arise merely because "the same patent is asserted against the same HTC Smartphones."  Motion at 8; *see Xiaohua Huang v. Huawei Techs. Co.*, 2019 WL 1246260, at *4 (E.D. Tex. Feb. 12, 2019), *report and recommendation adopted*, 2019 WL 1239433 (E.D. Tex. Mar. 18, 2019) (explaining that "device equivalence is a necessary but not sufficient condition for claim preclusion").[5]

To determine whether both suits involve the same cause of action, the Fifth Circuit applies the transactional test, which focuses on whether the two cases "are based on the same nucleus of operative facts."  *Hous. Prof'l Towing*, 812 F.3d at 447; *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).  Likewise, "a claim for patent infringement can only be barred by claim preclusion if that claim arises from the same transactional facts as a prior action."  *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1326 (Fed. Cir. 2008).  "It is the nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted that defines the claim."  *Hous. Prof'l Towing*, 812 F.3d at 447.  Further,

---

[5] In the HTC Corp. litigation, the jury did not make a specific finding that HTC Corp.'s products were noninfringing—*i.e.* not constituting the "patented invention."  Rather, the jury found that Salazar had not proven "that HTC Corporation infringed ANY of the Asserted Claims **through the use, sale, or offer for sale in the *United States*, or importation into the *United States*,** of any of the following Accused Products."  Verdict Form, Dkt. #272, at 2 (**Ex. A**) (emphasis added).  Thus, the jury's finding of noninfringement may well have been based on HTC Corp.'s lack of activities giving rise to infringement in the United States—and *not* because the accused devices failed to meet the claim elements of the asserted claims.

> [w]hat factual grouping constitutes a "transaction" . . . [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Petro–Hunt, L.L.C. v. United States,* 365 F.3d 385, 396 (5th Cir. 2004) (quoting Restatement (Second) of Judgments § 24(2)).

As the Federal Circuit has explained, "[W]e find no authority that claim preclusion would apply to conduct of a different nature from that involved in the prior litigation." *Young Eng'rs, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1316 (Fed. Cir. 1983). Moreover, a claim is not barred solely because it could have been raised in a prior action between the parties that was resolved by a final judgment on the merits. *See Acumed*, 525 F.3d at 1325-26.

Under the controlling law, claim preclusion is improper because the present litigation does not share the same nucleus of operative facts nor arise from the same transactional facts as the HTC Corp. litigation. In short, (a) the two cases are unrelated in time, space, origin, or motivation and do not share the same nucleus of operative facts; (b) HTC Corp. admits that the two cases do not share the same nucleus of operative facts and asserted a defense to infringement that is inapplicable to the facts of this case; and (c) the treatment of the cases as a unit does not conform to the parties' expectations or business understanding or usage.

### a. The two cases do not share the same nucleus of operative facts and arise from transactional facts that are unrelated in time, space, origin or motivation.

The present case and the HTC Corp. litigation do not share the same nucleus of operative facts and arise from different transactional facts that "are not related in time, space, origin, or motivation." *See Petro–Hunt*, 365 F.3d at 396. The present case involves Salazar's infringement suit against U.S. carriers AT&T Mobility, Sprint, T-Mobile, and Verizon, alleging

that Defendants have offered for sale or used, and sold, distributed, promoted, or provided for use by others the accused devices in the United States.  The transaction at issue and the nucleus of operative facts here involves U.S. sales of the accused devices from these carrier/retailers to the end users—the customers located in the United States who ultimately purchased the HTC smartphones.  This case does *not* involve the facts of HTC Corp.'s overseas activities, whether HTC Corp. committed any acts of infringement in the United States, or HTC Corp.'s transactions with its subsidiary, HTC America.  Here, unlike the first case, it is undisputed that the defendants made sales of the accused devices in the United States.  *See, e.g.*, Dkt. #149 (**Ex. B**), at 23; Dkt. #193 (**Ex. C**), at 10; Tr. Transcript, 5/10/2018 (all day), at 48:2-49:7 (**Ex. D**); HTC Corporation's Responses to Plaintiff Joe Andrew Salazar's Third Set of Interrogatories to Defendant HTC Corporation, at 7-8 (**Ex. E**).

The first case, by contrast, dealt with an entirely separate transaction and nucleus of operative facts—the manufacture of the accused devices by HTC Corp. overseas, the subsequent sale of these devices to subsidiary/distributor HTC America, and whether those transactions amounted to infringement under U.S. law.  This difference in transactions and nucleus of operative facts is material in this case because the issue of whether the accused devices practice the claim elements of the asserted claims was not resolved in the first case and that issue is necessary to resolve the issue of infringement here.[6]

### b.   HTC Corp. admits that the two cases do not share the same nucleus of operative facts.

In the first case, Salazar alleged that HTC Corp. had infringed his patent through the use, sale, and offer for sale in the United States, and importation into the United States, of the accused products.  HTC Corp. responded that it could not be held liable under U.S. law because it was

---

[6] *See* fn5, *supra*.

strictly a Taiwanese company doing business in Taiwan, and it performed no infringing acts in the United States. *See, e.g.*, **Ex. B** at 2, 6, and 23; **Ex. C** at 9-10; **Ex. D** at 48:2-49:7. According to HTC Corp., it manufactured the accused devices in Taiwan—never in the United States. **Ex. B** at 23; **Ex. D** at 48:2-49:7. HTC Corp. maintained that its subsidiary, HTC America, was the importer, marketer, and distributor for HTC-brand smartphones and the accused devices sold in the United States (**Ex. B** at 23; **Ex. D** at 48:2-49:7; Judge Payne's Report and Recommendation, Dkt. #250, at 13-14 (**Ex. F**); HTC Corporation's Responses to Plaintiff Joe Andrew Salazar's Second Set of Interrogatories (Nos. 11-23) to Defendant HTC Corporation, at 7-9 (**Ex. G**)) and that title to all HTC Corp.-branded smartphones passed to HTC America outside of the United States (**Ex. F** at 13-14).

Furthermore, HTC Corp.[7] was adamant that it had no connection to Defendants in this case, the U.S. carriers, and explicitly acknowledged that any sale between HTC America and the U.S. carriers were part of an entirely separate transaction. Indeed, in HTC Corp.'s Motion to Sever and Stay Salazar's case against AT&T in the first case, HTC Corp. argued that Salazar was prohibited as a matter of law from joining AT&T or any carrier in this case under Section 299 because the U.S. carriers' actions constituted an entirely separate transaction. Specifically, when Salazar attempted to join AT&T as a defendant, HTC Corp. successfully argued that:

> even if, hypothetically, HTC directly sold the accused products to AT&T, Inc., which, in turn, resold those products to AT&T, Inc. customers . . . , **these**

---

[7] The Defendants in this case argue that they are in privity with HTC Corp. and that HTC Corp. was their virtual representative. Accordingly, the position taken by HTC Corp. in the first case can be understood as the position of the carriers. *See, e.g.*, *Feuerbacher v. Wells Fargo Bank*, No. 4:15-CV-59, 2016 WL 3669744, at *3, n.2 (E.D. Tex. July 11, 2016), *aff'd*, 701 Fed. Appx. 297 (5th Cir. 2017); *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 996 (9th Cir. 2012); *Maitland v. Univ. of Minn.*, 43 F.3d 357, 363-64 (8th Cir. 1994); *In re Johnson*, 518 F.2d 246, 252 (10th Cir. 1975); *Lia v. Saporito*, 909 F. Supp. 2d 149, 175 (E.D.N.Y. 2012) ("[Judicial estoppel] applies not only against the actual parties to a prior litigation, but also against a party that is in privity to a party in the prior litigation.").

> **independent transactions would not be sufficient to satisfy Section 299's
> "same series of transactions or occurrences" test**.  As one court has explained
> at length, even a direct manufacturer-retailer relationship (which, again, is not
> present in this case), without more, is insufficient to satisfy Section 299.

HTC Corporation's Motion to Sever and Stay Claims Against Newly-Added Defendant AT&T,

Inc., Dkt. #55, at 4 (**Ex. H**) (emphasis added).[8]

HTC Corp. took the position that offers for sale and sales in the United States of the

accused devices retailed by the U.S. carriers were made by HTC America—*not* HTC Corp.—and

that HTC Corp. thus could not be liable for direct infringement of any carrier-retailed products.[9]

*See e.g.*, **Ex. B** at 23; **Ex. C** at 10.

Moreover, the two cases do not share the same nucleus of operative facts because HTC

Corp. relied on a defense to infringement—that their accused activities took place in Taiwan—

that cannot be invoked by Defendants in this case because there is no dispute their accused

activities occurred in the United States.  As discussed in Section II.A.1.a., *supra*, HTC Corp.

argued throughout the litigation that it was not liable for infringement because all of its business

activities took place solely in Taiwan.  This defense was raised not only throughout HTC Corp.'s

pre-trial motions[10] and during discovery, it was a centerpiece of HTC Corp.'s noninfringement

theory at trial.  For example, in their opening statement, HTC Corp.'s counsel argued:

> You may not have heard very much about HTC Corp before this case because
> HTC Corp does not actually make, use, offer, or sell their phones in the United

---

[8] In its Partial Joinder to HTC Corp.'s Motion to Sever, AT&T argued that it was "merely a distributor or reseller of the accused products—a peripheral defendant."  Dkt. #70, at 2 (**Ex. I**).

[9] For example, in its Motion for Summary Judgment of Non-Infringement, which was granted in part, HTC Corp. contended that all sales of the accused devices to Sprint were made by HTC America, whereas its own acts were outside the scope of 35 U.S.C. § 271.  **Ex. B** at 23; **Ex. F** at 13-14.  Likewise, at trial, HTC Corp. stated that "all of the invoices that are in evidence for the accused products show sales of those accused products by HTC America to U.S. customers."  **Ex. D** at 48:2-49:7.

[10] Defendants are represented by the same law firm that represented HTC Corp. in the pretrial motions and the trial in the first case.

States, nor do they import their phones into the United States. As many companies do, whether they're headquartered in the U.S. or elsewhere, there is a separate HTC company called HTC America, Inc. . . . that separate company does the United States – States's operations.
. . . .

What you'll learn in this case is that HTC America is the company that imports the phones into the United States. You'll learn that HTC America is the company that offers and sells the phones in the United States, including here in Texas, you'll learn that HTC America, as you've already heard, actually is not a Defendant in the case. The only Defendant here is HTC Corp, the separate parent company.

Those facts are important because under United States patent law, only actions that take place in the United States can infringe a United States patent.

Tr. Transcript, 5/7/2018 (Afternoon Session), at 63:20-64:17 (**Ex. J**). In its closing statement,

HTC Corp.'s counsel stated:

Mr. Salazar's . . . not presented sufficient evidence that HTC Corporation performs any infringing acts. Mr. Salazar has failed to produce any evidence showing that HTC Corp violated Section 271(a) requiring proof of the acts to occur within the United States.

HTC Corporation is a Taiwanese corporation doing business in Taiwan. In contrast, the non-party, HTC America, is the company responsible for sales and marketing in the United States.

During Mr. Salazar's case-in-chief, he was never able to establish that it was HTC Corporation who – who made, used, offered for sale, and sold the accused devices in the United States or imported the infringing product into the United States.

Just this week, Mr. Sal – Mr. Salazar stipulated that HTC Corporation does not make any accused product in the United States. And Mr. Salazar failed to show any evidence that HTC Corp uses any device in the United States.

Finally, Mr. Salazar has not presented evidence that HTC Corp imported accused devices in the United States. And even if the accused devices otherwise infringe, Mr. Newby-House and Ms. Lai provided testimony that the only entity that could have performed any allegedly infringing act in the United States is HTC America.

For example, all of the invoices that are in evidence for the accused products show sales of those accused products by HTC America to U.S. customers. Those same invoices show that the origin of those products is Taiwan, and the evidence

shows that HTC America is the importer of the accused products in the United States.

**Ex. D** at 48:2-49:7.  HTC Corp. also argued:

> There's one other reason, though, why you can find that HTC Corporation doesn't infringe, and that's because – it has nothing to do with microprocessors or memory devices, it just has to do with the United States, because only infringing acts in the United States count for infringement.  Only if you import, make, use, sell, offer for sale in the United States can you be an infringer.

> And Ms. Lai . . . explained that HTC America, not HTC Corp, is the importer. She explained that HTC America offers and sells these products in the United States.

Tr. Transcript, 5/11/2018 (All Day), at 67:17-68:2 (**Ex. K**).

For this additional reason, the two cases do not share the same nucleus of operative facts.

> ### c.    *The two cases do not share the same nucleus of operative facts, because the treatment of the cases as a unit does not conform to the parties' expectations or business understanding or usage.*

As discussed in Sections II.A.1.a.-b., *supra*, treatment of the cases as a unit does not conform to the parties' expectations or business understanding or usage.  HTC Corp. took the position that it had no business relationship with Defendants in this case and that its manufacture of the accused devices in Taiwan was an entirely separate transaction from the offers for sale and sales in the United States of the accused devices retailed by the U.S. carriers.  When Salazar attempted to join AT&T as a defendant in the first case, HTC Corp. successfully severed AT&T from the case on the basis that the parties' business transactions were unrelated.  **Ex. H** at 4. Likewise, in its Partial Joinder to HTC Corp.'s Motion to Sever, AT&T distanced itself from HTC Corp., insisting that it was merely "peripheral" to the HTC Corp. litigation.  **Ex. I** at 2. These actions, and HTC Corp.'s own admissions, establish that treating the two cases as a unit does not conform to the parties' expectations or business understanding or usage.  *See Petro– Hunt,* 365 F.3d at 396.  Accordingly, the cases do not share the same claim or cause of action.

### 2.      HTC Corp. and the U.S. carriers are not in privity.

Because the two cases do not share the same claim or cause of action, the Court need not reach this factor.  However, Defendants' contention that they and HTC Corp. are in privity is not only inconsistent with the governing law, it misrepresents the relationship between the parties and contradicts HTC Corp.'s own admissions and arguments made in the first case.

Privity is a "legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 677 (5th Cir. 2003) (quoting *Sw. Airlines, Inc. v. Tex. Int'l Airlines, Inc.,* 546 F.2d 84, 95 (5th Cir. 1977)).  Privity "designates a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved."  *Sw. Airlines*, 546 F.2d at 95 n.38.  The privity analysis requires a court "to look to the surrounding circumstances to determine whether claim preclusion is justified."  *Russell v. SunAmerican Sec., Inc.,* 962 F.2d 1169, 1173 (5th Cir. 1992) (citation omitted).  "[T]he due process clauses prevent preclusion when the relationship between the party and non-party becomes too attenuated."  *Sw. Airlines*, 546 F.2d at 95 (citing *Hansberry v. Lee*, 311 U.S. 32 (1940)).

A non-party is considered to be in privity for preclusion purposes "where the party to the first suit is so closely aligned with the nonparty's interests as to be his 'virtual representative.'" *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 960 F.2d 1286, 1297 (5th Cir. 1992) (citations omitted).  For virtual representation to arise, "there must be an express or implied legal relationship between the party and the nonparty in which the party to the first suit

is accountable to the non-party who files a subsequent suit raising identical issues." *Id.* (citation and alterations omitted).  "Federal courts have deemed three types of relationships sufficiently close to justify preclusion: (1) "a non-party who has succeeded to a party's interest in property," (2) "a non-party who controlled the original suit," and (3) "a non-party whose interests were represented adequately by a party in the original suit."[11] *Texas v. Dep't of Labor*, 929 F.3d 205, 211 (5th Cir. 2019) (quoting *Sw. Airlines*, 546 F.2d at 95).   "[A] party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum: (1) The interests of the nonparty and her representative are aligned . . . and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the nonparty's interests."   *Taylor v. Sturgell*, 553 U.S. 880, 900 (2008) (citations omitted). "[A]dequate representation does not exist where a nonparty is merely interested in the same issue or same set of facts, or because the issue being litigated is one that might affect their interests by providing a judicial precedent that would be applied in a subsequent action."  *Dep't of Labor*, 929 F.3d 205 at 211 (citations and quotation marks omitted).

Based on these principles, the Federal Circuit has held that "a manufacturer or seller of a product who is sued for patent infringement typically is not in privity with a party, otherwise unrelated, who does no more than purchase and use the product."  *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1306 (Fed. Cir. 2007); *see also S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 567 F. App'x 945, 959-61 (Fed. Cir. 2014) (reversing the district court's conclusion that manufacturers and distributors of the same goods were in privity with each other

---

[11] The first two relationships are not implicated in this case.  Defendants have not succeeded to HTC Corp.'s interest in property, nor did Defendants control the original suit.  *See Stearns Airport Equip. Co. v. Revolving Media, Ltd.*, 1996 WL 722073, at *6 (N.D. Tex. Dec. 6, 1996) ("Control is given a narrower definition in the claim preclusion context; it must be "such as to place [the non-party's interests before the court.").

"by virtue of the distributorship" and explaining that "with regard to questions of intellectual property infringement and invalidity, the person who buys an allegedly infringing product is not considered to be in privity with the person who sells him the product").   "In other words, ordinarily such parties are not so closely related and their litigation interests are not so nearly identical that a patentee's suit against one would bar a second action against the other under the doctrine of claim preclusion." *Transclean Corp.*, 474 F.3d at 1306.

Here, Defendants have failed to establish that their relationship with HTC Corp. "is sufficiently close to afford application of the principle of preclusion," *Vasquez*, 325 F.3d at 677, that HTC Corp. was "so closely aligned with [their] interests as to be [their] 'virtual representative,'" *Royal Ins. Co. of Am.*, 960 F.2d at 1297, or that HTC Corp. adequately represented their interests, *Dep't of Labor*, 929 F.3d at 211.   To the contrary, the record establishes that (a) HTC Corp. emphasized throughout the first case that its connection to the U.S. carriers was remote at best, distinguished its position from theirs whenever possible, and successfully severed Defendant AT&T from the case; (b) HTC Corp. made every attempt to obfuscate its relationship with the carriers and withhold key information from Salazar; and (c) HTC Corp. did not adequately represent Defendants' interests and, in fact, made multiple strategic decisions to further its own interests to the detriment of the U.S. carriers.

> **a.** ***HTC Corp.'s efforts to distance itself from Defendants and the parties' decision to sever AT&T from the first case establishes that there is no privity.***

First, as discussed in Sections II.A.1.a.-c, *supra*, HTC Corp. took the position throughout the first case that it had no business relationship with the Defendants in this case.  It emphasized that it was a foreign corporation whose manufacture of the accused devices in Taiwan was an entirely separate transaction from the offers for sale and sales in the United States of the accused

devices retailed by Defendants, and that the only sales it made were to HTC America in Taiwan. HTC Corp. maintained that it was HTC America that imported the accused products into the United States and sold them to the U.S. carriers, and that HTC Corp. and HTC America were separate entities such that HTC Corp. was absolved of any liability for HTC America's infringing acts. HTC Corp.'s Motion to Sever and Stay Claims Against Newly-Added Defendant AT&T, Inc. (**Ex. H**) and AT&T's Partial Joinder to HTC Corp.'s Motion to Sever (Dkt. #70)( **Ex. I** )—which was submitted by AT&T's own separate counsel and took positions distinct from HTC Corp.'s—provide additional powerful evidence that HTC Corp. and Defendants are not in privity. Not only did HTC Corp. and carrier AT&T assert that their business transactions were unrelated and that AT&T was merely "peripheral" to the case, the parties tacitly admitted that the HTC Corp. litigation was *not* the case where AT&T and the U.S. carriers' liability should or would be addressed. S*ee, e.g.*, **Ex. H** at 4; **Ex. I** at 2. These actions establish that HTC Corp. was not acting as Defendants' "virtual representative" in the first case. *See Royal Ins. Co. of Am.*, 960 F.2d at 1297.

> **b.** ***There is no privity because HTC Corp. attempted to conceal its relationship with Defendants at the relevant times in the first litigation.***

Contrary to Defendants' representation, HTC Corp. was not forthcoming with its relationship with Defendants such that it was acting as their "virtual representative." The record shows that HTC Corp. attempted to conceal from Salazar the carrier purchase agreements[12]—

---

[12] Defendants point to purchase agreements with HTC Corp. in an attempt to demonstrate privity through a close, distribution relationship. *See* Motion at 10-12. Defendants' argument directly contradicts positions taken by HTC Corp. in the first litigation, where HTC Corp. argued that Defendants were customers of HTC America—not HTC Corp. HTC Corp. maintained that it was subsidiary HTC America that was the importer, marketer, and distributor for HTC-brand smartphones sold in the United States (**Ex. B** at 23; **Ex. D** at 48:2-49:7; **Ex. F** at 13-14). Nevertheless, even if Defendants *were* distributors, that alone is insufficient to establish privity. *Transclean Corp.*, 474 F.3d at 1306; *see also S. Snow Mfg. Co.*, 567 F. App'x at 959-61.

identifying which U.S. carriers had a relationship with HTC Corp., along with the nature of these relationships—and only reluctantly produced the carrier agreements after being pressed by Salazar and the Court to do so.  In July 2017, when Salazar attempted to join AT&T to the HTC Corp. litigation, and HTC Corp. and AT&T moved to sever, HTC Corp. had not produced the carrier purchase agreements, despite Salazar's request for this information.  Only after repeated requests from Salazar did HTC Corp. produce some of the relevant agreements six months late (in December 2017).  *See* Plaintiff Joe Andrew Salazar's Motion to Compel Defendant HTC Corporation to Comply with the Court's Discovery Order, Answer Interrogatories and Produce 30(b)(6) Witnesses and to Overrule Objections, at 3 (**Ex. O**).  And only after Salazar filed a motion to compel later that month, did HTC Corp. produce the purchase agreement with AT&T. *See* **Ex. O** at 2-4.

Thus, HTC Corp.'s assertions that at the relevant times Salazar "was plainly aware of the relationship among HTC Corp., HTC America, and the Defendants during *Salazar I*," knew that "each Defendant was a known reseller of [the phones at issue] with an interest in their sale and unfettered use," or had "full knowledge of the . . . facts and issues" are patently false.  Motion at 9-12.  Moreover, this obfuscation of the parties' relationship by HTC Corp. demonstrates that HTC Corp. was not acting as Defendants' "virtual representative" in the first case, *see Royal Ins. Co. of Am.*, 960 F.2d at 1297, did not "under[stand] [it]self to be acting in a representative capacity," *Taylor*, 553 U.S. at 900, or that Defendants were "so identified in interest with a party to former litigation" such that the parties are in privity," *see Sw. Airlines*, 546 F.2d at 95 n.38.

### c.     *There is no privity because HTC Corp. did not adequately represent Defendants' interests in the first case.*

HTC Corp. did not adequately represent Defendants' interest in the first case such that the parties are in privity.  *See Taylor*, 553 U.S. at 900; *Dep't of Labor*, 929 F.3d at 211.  To the

contrary, HTC Corp. made multiple strategic decisions to further its own interests at the expense of Defendants.  For example, HTC Corp. elected to withdraw its invalidity counterclaim at trial. Following the jury's return of a verdict of noninfringement but failure to note a decision as to invalidity on the jury form, the Court gave HTC Corp. the choice between dismissing its invalidity counterclaim or sending the claim back to the jury.  *See* Joe Andrew Salazar's Opposition to HTC Corporation's Motion Dismiss Its Counterclaim for Invalidity Without Prejudice, at 1 (Dkt. # 292) (**Ex. L**); **Ex. A** at 2.  HTC Corp.'s counsel conferred, made a tactical decision to withdraw its claim, and the Court consequently accepted the verdict with the invalidity claim dismissed.  **Ex. L** at 1.  This strategic decision benefitted HTC Corp., which had already prevailed on noninfringement and did not want to risk the jury changing its mind during further deliberations.  *Id*. at 9 n. 2.  However, it was not in Defendants' best interest, as it left Salazar patent valid and Defendants open to liability for infringement in a subsequent lawsuit.

HTC Corp. made other decisions that furthered its own interests while not adequately representing Defendants.  For example, the jury verdict form did not clarify whether HTC Corp. did not infringe the asserted claims because: (1) HTC Corp. did not commit any infringing acts in the United States or (2) the accused devices did not satisfy the claim elements of the asserted claims of Salazar's patent.  *See* **Ex. A** at 2.  In asserting the defense that its actions did not occur in the U.S. (a defense unavailable to Defendants) and also leaving the jury without the ability to clarify why they found HTC Corp. did not infringe, HTC Corp. furthered its own interests at the expense of Defendants.  Additionally, HTC Corp.'s decision to argue throughout the first case that Defendants—and not HTC Corp.—were in fact making sales of the accused devices in the United States was self-serving and damaging to Defendants.  S*ee, e.g.*, **Ex. B** at 23; **Ex. C** at 10; **Ex. D** at 48:2-49:7; **Ex. E** at 7-8.

15

The record plainly establishes that HTC Corp. did not adequately represent Defendants' interests, because its interests and Defendants' interests were not aligned, nor did HTC Corp. behave as if it understood itself "to be acting in a representative capacity."  *See Taylor*, 553 U.S. at 900.  For this additional reason, the parties are not in privity.

### d.   *Even if Defendants could establish privity with HTC Corp., their arguments should be barred by judicial estoppel.*

Even if Defendants' could establish privity, their current positions on this issue should be barred by judicial estoppel.  Judicial estoppel applies "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position"; thereafter, "he may not ..., simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689 (1895); *accord New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). The doctrine is generally applied where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice."  *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999).  The Fifth Circuit has noted that the doctrine of judicial estoppel is designed to protect the judicial system rather than the litigants.  *Id.*

Here, Defendants' current positions that HTC Corp.'s interests were "so closely aligned with [defendants]'s interests as to be [their] virtual representative," *Aerojet–General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975), and that this case involves the same claim as the HTC Corp. litigation, directly contradicts the position taken by HTC Corp. and Defendants[13] in the first case.  Indeed, HTC Corp. emphasized throughout the first case that its connection to the U.S. carriers was remote at best and distinguished its position from theirs whenever possible.

---

[13] As Defendants argue here that they are in privity with HTC Corp., then HTC Corp.'s position on this issue should be imputed to Defendants.  *See* fn 7, *supra*.

*See* Section II.A.2.a.-c., *supra*.  Further, HTC Corp. and AT&T successfully severed Defendant AT&T from the case in part based on representations by HTC Corp. that the U.S. carriers' actions constituted an entirely separate transaction and representations by AT&T that it was a "peripheral defendant."  *See* **Ex. H** at 4; **Ex. I** at 2.  Accordingly, judicial estoppel should bar Defendants' now asserted position regarding the relationship of the parties.

> **B.**  **The application of claim preclusion in this case would clearly prejudice Salazar.**

The application of claim preclusion in this case would clearly prejudice Salazar and Defendants' arguments to the contrary misrepresent the facts and ignore HTC Corp.'s concealment of material facts in the first case.  Claim preclusion is an equitable doctrine with limits and exceptions.  *HRD Corp. v. Dow Chem. Co.*, No. CV H-13-3596, 2019 WL 162094, at *5 (S.D. Tex. Jan. 9, 2019), citing *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598 (S.D. Tex. 2010).  "[I]f a claim could not have been brought because of wrongful concealment of material facts, preclusion cannot apply."  The Restatement (Second) of Judgments provides that claim preclusion does not apply if "[i]t is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason."  Restatement (Second) of Judgments § 26(f).  Fraud, concealment, or misrepresentation by a party could provide a basis to depart from claim preclusion.  *Id.* cmt. j.  In *Rimkus,* the defendants destroyed evidence of their culpability and delayed providing information in discovery showing information taken[14] from Rimkus.  688 F. Supp. 2d at 664.  Because of the defendants' spoliation of evidence, the plaintiff was unable to learn of certain claims it had against the defendants.  *Id.*  The court concluded that because of the defendants' misconduct, the policies underlying preclusion law would not be served by barring the plaintiff's claims against

---

[14] *Rimkus* involved claims of misappropriation of trade secrets.  699 F. Supp. 2d at 665.

the                    defendants.                  *Id.* at                    664-65.

Here, as discussed above, Salazar would clearly be prejudiced if he were both prevented from adding AT&T to the previous HTC Corp. litigation[15] and precluded from suing AT&T now. Salazar was not "[p]lainly aware of the relationship among HTC Corp., HTC America, and Defendants" and was prejudiced as a result. Indeed, similar to *Rimkus*, HTC Corp. attempted to conceal and misrepresent these relationships and, as discussed above, did everything it could not to produce the carrier agreements. *See supra* at II.A.2.a-b. Further, HTC Corp. and AT&T successfully moved to sever and stay the case based in part on representations about the parties' relationship—namely that the parties' business transactions were unrelated[16]—that Salazar could not effectively challenge because of HTC Corp.'s concealment of its agreements with the carriers. Accordingly, if unable to sue AT&T in the instant case, Salazar would clearly be prejudiced as AT&T would effectively shield itself from litigation in both the HTC Corp. case and the instant case. Accordingly, even if claim preclusion were appropriate in this case (which it is not), it should not be applied because "the policies underlying preclusion law would not be served by barring the plaintiff's claims against the defendants." *Rimku*s, 699 F. Supp. 2d at 664.

### C.    The *Kessler* doctrine does not apply to this case.

Defendants' attempt to apply the *Kessler*[17] doctrine to bar conduct occurring prior to the HTC Corp. judgment contravenes precedent. The *Kessler* doctrine is a limited one that was created to fill the gap between claim and issue preclusion and post judgment conduct. *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1056 (Fed. Cir. 2014). Because the Federal Circuit has

---

[15] Contrary to Defendants' assertions, Salazar attempted to join carrier AT&T Mobility to the HTC Corp. litigation. *See Salazar v. HTC*, 2:16-cv-01096-JRG-RSP Dkt. # 62 (**Ex. M**).

[16] AT&T also benefited from HTC Corp.'s concealment of evidence, as it was able to successfully distance itself from HTC Corp., insisting that it was merely "peripheral" to the HTC Corp. litigation. **Ex. I** at 2.

[17] *Kessler v. Eldred*, 206 U.S. 285 (1907).

held that "claim preclusion does not bar a party from asserting infringement based on activity occurring *after* the judgment in the earlier suit," the *Kessler* doctrine may preclude assertions of a patent against even post-judgment activity if the earlier judgment held that "essentially the same" *accused activity* did not infringe that patent.  *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1170 (Fed. Cir. 2018) (emphasis added); *Brain Life*, 746 F.3d at 1057–58.  The Federal Circuit has not applied the *Kessler* doctrine to bar a broader *set of rights* than would be barred by claim preclusion.  *SimpleAir,* 884 F.3d at 1170 (emphasis in original).  Nor has the Federal Circuit applied the *Kessler* doctrine to activity predating the earlier judgment.[18]    *Id.* Accordingly, the *Kessler* doctrine only bars a party from asserting claims of infringement for conduct occurring after a judgment of noninfringement.   *Simple Air* is illustrative.   There, defendant Google raised the *Kessler* doctrine as an alternative to its claim preclusion defense, arguing that the *Kessler* doctrine should apply to its alleged activity predating the earlier judgment.  *Id*. at 1169-70.  The Federal Circuit rejected Google's attempt to "subsume claim preclusion within a more expansive, *sui generis Kessler* doctrine," explaining that "the *Kessler* doctrine just fills a particular temporal gap between preclusion doctrines."  *Id.* at 1170.

Here, Salazar does not allege any infringing conduct occurring after the final judgment in the HTC Corp. case—nor could he.  His patent expired on September 28, 2015—over a year before the HTC Corp. case was filed and two and a half years before final judgment on May 18, 2018.  *See Salazar v. HTC* Final Judgment, Dkt. No. 284 (**Ex. N**).  Thus, Salazar could not allege any infringing post-final judgment conduct by Defendants, as Salazar's patent was expired at the time of final judgment in the HTC Corp. case.  Accordingly, Defendants' attempt to expand the

---

[18]  The *SpeedTrack* case relied on by Defendants expressly acknowledges that the *Kessler* doctrine is directed at preventing a party from suing a manufacturer's customers for "*acts of infringement that post-dated the judgment in the first action.*" *SpeedTrack Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1325-27 (Fed. Cir. 2015); Motion at 15 (emphasis in Defendants' Motion).

reach of the *Kessler* doctrine to their conduct predating the HTC Corp. final judgment violates precedent and should be rejected.

Even if the *Kessler* doctrine applied to prefinal judgment conduct, Defendants fail to establish it applies in this instance.  As previously noted, the jury in the HTC Corp. case found only that HTC Corp. did not commit acts giving rise to infringement in the U.S., but did not decide whether the accused devices in fact practiced the asserted claims of the Salazar patent.[19] *See* Sections II.A.1, fn 5, 6; II.A.2.c, *supra; Brain Life*, 746 F.3d at 1057–58.  The cases cited by Defendants are also inapposite as they involve instances where the first judgment found the products did practice the claims of the patent at issue.  *See* Motion at 13-15. Therefore, because the instant case does not involve the same accused activity (Section II.A.1.a-b, *supra*), and the HTC Corp. litigation did not decide whether or not the accused devices practiced the asserted claims of the Salazar patent (**Ex. A** at 2), Defendants' *Kessler* doctrine defense is without merit.

## III.  CONCLUSION

For the foregoing reasons Plaintiff respectfully requests that Defendants' Joint Motion to Dismiss be denied in its entirety.

Respectfully submitted,

/s/Geoff Culbertson

Geoffrey Culbertson
TX Bar No. 24045732
gpc@texarkanalaw.com
Kelly Tidwell
TX Bar No. 20020580
kbt@texarkanalaw.com

---

[19] Defendants' argument that "[t]he HTC Smartphones accused of infringement are the same HTC Smartphones found not to infringe in *Salazar I*" misrepresents the record.  The HTC Corp. litigation did not make any finding regarding whether the HTC Smartphones practiced Salazar's patent claims.  Sections II.A.1, fn 5; II.A.2.c, *supra.*

PATTON, TIDWELL &
CULBERTSON, LLP
2800 Texas Boulevard
Texarkana, Texas 75503
Telephone: 903-792-7080
Fax:     903-792-8233


Dariush Keyhani (Lead Attorney)
District of Columbia Bar No. 1031500
(*pro hac vice*)
Frances H. Stephenson
New York registration No. 5206495
(*pro hac vice*)
Keyhani LLC
1050 30th Street NW
Washington, DC 20007
Telephone: (202) 748-8950
Fax: (202) 318-8958
dkeyhani@keyhanillc.com
fstephenson@keyhanillc.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with the Federal Rules of Civil Procedure. All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. Mail, CMRRR on this 1st day of November, 2019.

21