**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | |
|---|---|
| JOE ANDREW SALAZAR,<br><br>    Plaintiff,<br><br>    v.<br><br>AT&T MOBILITY LLC,<br>SPRINT/UNITED MANAGEMENT<br>COMPANY,<br>T-MOBILE USA, INC., and<br>CELLCO PARTNERSHIP d/b/a VERIZON<br>WIRELESS,<br><br>    Defendants. | Civil Action No. 5:19-cv-75<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS UNDER RULE 12(b)(6)**

Salazar's opposition continues his improper attempt to relitigate and avoid the preclusive effects of the jury verdict and final judgment rendered by the Marshall Division of this Court in *Salazar I*.[1]  Salazar hides from the scope of his claim in *Salazar I* by arguing—contrary to the law—that his claim is defined only by the evidence presented at trial rather than by the clear and undisputed language of his complaint.  In another insupportable attempt to avoid claim preclusion, Salazar argues without basis that HTC Corp. was guilty of "concealing" or "misrepresenting" the relationships between HTC Corp. and Defendants.  Yet Salazar himself discussed these relationships and presented the supposedly "concealed" documents[2] as exhibits <u>in front of the jury during the trial</u>.  Throughout his opposition, rather than disputing the points established by Defendants, Salazar encourages the Court to invoke judicial estoppel and hold the Defendants to HTC Corp.'s positions in *Salazar I*.  But Salazar fails to establish that (or address whether) the Court in *Salazar I* accepted HTC Corp.'s arguments as true, which is an essential element of judicial estoppel.  Because he fails to show that judicial estoppel applies, his arguments should be disregarded.

Salazar also wants to limit the *Kessler* doctrine to post-judgment conduct, a limitation that has never been applied by any court, including the Federal Circuit.  Therefore, Salazar has failed to show that his Complaint should avoid dismissal, as the claim is precluded by the final judgment in *Salazar I* and by operation of the *Kessler* doctrine.

**I.        Salazar's complaints show that this case presents the same claim he already lost.**

The claim presented in *Salazar I* and *Salazar II*[3] arises from the same nucleus of operative facts, as demonstrated by Salazar's complaints.  It is the **complaint** that defines the plaintiff's

---

[1] *Salazar v. HTC Corp.,* No. 2:16-cv-1096 (E.D. Tex.).
[2] To be clear, the documents at issue were properly produced by HTC Corp. during discovery, giving Salazar full opportunity to use them in *Salazar I*.
[3] *Salazar v. AT&T Mobility, LLC*, No. 5:19-cv-75 (E.D. Tex.).

1

"claim for relief." Fed. R. Civ. P. 8(a). Two claims are not different merely because they vary in "the type of relief requested, substantive theories advanced, or types of rights asserted." *U.S. v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007). Indeed, claim preclusion runs to all issues that "<u>were or could have been raised</u>." *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (emphasis added). This includes facts pled but not pursued through trial. *Adaptix v. AT&T Mobility LLC*, No. 6:12-cv-17, 2015 WL 12696204, at *15 (E.D. Tex. May 12, 2015).

The complaint in *Salazar I* accuses the same three HTC Smartphones of infringing the same patent asserted in *Salazar II*. *Salazar I*, Dkt. 44, at ¶ 15, 17. The complaint also makes clear that it encompasses the sale of the HTC Smartphones by HTC's "direct and indirect customers," which include these Defendants. *Salazar I*, Dkt. 44, at ¶ 17. Salazar expressly alleged in *Salazar I* that HTC Corp. "induced, caused, urged, encouraged, aided, and abetted **its direct and indirect customers** to infringe the claims of the '467 Patent." *Id*. Thus, as framed by Salazar's own complaint, the downstream sale of the HTC Smartphones by HTC Corp.'s direct and indirect customers (the Defendants accused of infringement here) falls squarely within the claim brought in *Salazar I*, and is therefore from the same "nucleus of operative fact."

This Court holds that claim preclusion extends to indirect infringement claims that a plaintiff pled but failed to pursue through trial, exactly as Salazar did here. *See Adaptix, Inc. v. AT&T Mobility LLC*, No. 6:12-cv-17, 2015 WL 12696204, at *15 (E.D. Tex. May 12, 2015). In *Adaptix*, the Court ruled that claim preclusion "bars all claims that were or *could have been advanced* in support of the cause of action on the occasion of its former adjudication, not merely those that were adjudicated." *Id.*, citing *In re Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990) (emphasis in original). Even though the plaintiff in *Adaptix* failed to include contributory infringement theories in its infringement contentions, "it could have continued to assert contributory

infringement, <u>as it was initially pled</u>." *Id.* (emphasis added). Thus, the plaintiff was barred from pursuing claims arising from the indirect theories stated in its first complaint. *Id* at *18.

As in *Adaptix*, the *Salazar I* complaint pled indirect infringement against HTC Corp. based on the actions of HTC Corp.'s direct and indirect customers. Those actions include the sale of HTC Smartphones by Defendants to their customers (both direct and indirect). The preclusive effect of *Salazar I* is plainly not limited to the theories presented at trial, and Salazar has provided no reason why this Court should depart from its well-established precedents (and those of the Federal Circuit) concerning the application of such preclusive effect. Salazar's claim as pled therefore arises from the same nucleus of operative fact as *Salazar I*, and is precluded.

**II.     Judicial estoppel does not apply to Defendants because Salazar has failed to show that the Court accepted any allegedly estopped fact as true.**

Salazar's opposition is littered with suggestions that the arguments of HTC Corp. in *Salazar I* are binding on and attributable to Defendants. Dkt. 40, at 6 n.7. There is no legal doctrine that supports that outlandish claim. Yet Salazar argues that judicial estoppel is broad enough to bind Defendants in this case. *Id.* However, he has presented <u>no evidence</u> that any position he attributes to Defendants was clearly accepted by the Court in *Salazar I*, which prevents any finding of judicial estoppel. *See New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). Absent success in persuading a court to accept a position, "a party's later inconsistent position introduces no risk of inconsistent court determinations," and therefore is not subject to judicial estoppel. *Id.*, *citing U.S. v. C.I.T. Constr., Inc.*, 944 F.2d 253, 259 (5th Cir. 1991). Absent a clear showing that the Court in *Salazar I* accepted any argument by HTC Corp. as true, judicial estoppel cannot apply to Defendants in any way.

The Court in *Salazar I* made clear that it did not accept as true any argument of HTC Corp. that Salazar seeks to attribute to Defendants. First, he has not shown (nor can he) that the Court

ever accepted that Salazar's claims against AT&T, Inc., were "merely secondary or peripheral." *See Salazar I*, Dkt. 80, at 3-4. In fact, the Court made clear that it severed AT&T, Inc., because it is "a holding company that does not sell the accused products, a fact that Salazar now concedes, [and] there are no transactions that connect HTC with AT&T as required by 35 U.S.C. § 299." *Salazar I*, Dkt. 80, at 4. The Court also described Salazar's misjoinder, as "an afterthought" that was "add[ed] . . . at the last moment without conducting the proper research to ensure he named the correct party." *Id.* Notwithstanding the misjoinder of AT&T, Inc., the Court ordered that Salazar's later motion to add AT&T Mobility, LLC, should be transferred into the severed case. *Id.* at 6. Rather than pursue that avenue, Salazar strategically chose to promptly dismiss the severed case. *Salazar v. AT&T, Inc.*, No. 2:17-cv-593-JRG (E.D. Tex.), Dkt. 13. There can be no judicial estoppel as a result.

Second, Salazar cannot show that the Court in *Salazar I* ever accepted HTC Corp.'s argument that it performed no acts in the United States with the HTC Smartphones. In fact, the Court considered and <u>rejected</u> that argument in ruling on HTC Corp's motion for summary judgment: "there is a fact issue as to whether Defendants 'sold' the accused devices to Sprint within the meaning of § 271." *Salazar I*, Dkt. 250, at 14-15. The jury verdict form contained no specific questions on why the jury found that the '467 Patent was not infringed, and Salazar filed no post-trial motions to clarify the jury verdict. *Salazar I*, Dkt. 272.

If Salazar wants the Court to apply judicial estoppel in this case, he cannot blithely attribute to Defendants every argument made in *Salazar I* without showing that the elements of judicial estoppel are satisfied on each one. The required showing must include at least that the Court accepted HTC Corp.'s statements as true <u>and</u> that Defendants are in privity with HTC Corp, along with the other elements of judicial estoppel. *See New Hampshire v. Maine*, 532 U.S. 742, 750-51

4

(2001). Defendants are willing to concede this: they are in privity for purposes of claim preclusion. *See* Dkt. 27, at 10-12 ("the sale of the HTC Smartphones in the United States was a collaborative effort involving HTC Corp., HTC America, and the Defendants . . . HTC Corp. therefore sufficiently represented Defendant's interests in *Salazar I* to establish privity for claim preclusion purposes") (emphasis in original). Given that privity, Salazar's claim is barred by claim preclusion, rendering his judicial estoppel arguments irrelevant at best.[4]

## III. Applying claim preclusion here will not unfairly prejudice Salazar, because the allegedly "concealed" documents were presented and used by Salazar in front of the jury.

Claim preclusion will not unfairly prejudice Salazar, and the Court should not hesitate to apply it. Salazar argues that imaginary misdeeds by HTC Corp. could render claim preclusion unfair. Dkt. 40, at 17-18. But if Salazar believed the judgment in *Salazar I* was tainted by fraud or concealment, he was obligated to present his evidence and arguments to the Court in *Salazar I*. The Fifth Circuit has ruled that arguing against claim preclusion by collaterally attacking a judgment on the grounds of fraud or concealment, as Salazar does here, is improper. *See Russell v. SunAmerica Securities, Inc.*, 962 F.2d 1169, at 1176-77 (5th Cir. 1992) ("this collateral attack on the validity of the prior judgment is improper. While fraudulent procurement of a prior judgment may indeed preclude the application of res judicata, the party claiming fraud should address this claim to the court which rendered the first judgment."). On this basis alone, Salazar's argument should be rejected.

And even if HTC Corp. were guilty of any (or all) of what Salazar imagines, he cannot credibly claim that he was unaware of the relationships between Defendants, HTC Corp., and HTC

---

[4] In the alternative, if the Court accepts Salazar's arguments that judicial estoppel applies to Defendants on any issue, that same judicial estoppel will necessarily estop Salazar from claiming that the Defendants and HTC Corp. are not in privity for claim preclusion purposes. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 205-206 (5th Cir. 1999). In either event, the complaint must be dismissed.

America. This fact is undisputed: HTC Corp. produced, and <u>Salazar introduced into evidence at trial the very contracts documenting the relationships that he now says were "concealed" from him</u>. *See Salazar I*, PX018a, PX018b, PX019, and PX020 (all admitted May 9, 2018). Salazar will not be heard to complain that "fraud, concealment, representation," or "spoliation" prevented his discovery of evidence that he presented at trial.[5] Nor did the Court's severance of AT&T, Inc., from *Salazar I* demonstrate or work any unfairness. Salazar attempted to add AT&T, Inc. (not Defendant AT&T Mobility, LLC) to the case, was given the opportunity to correct his original misjoinder, but instead strategically chose to abandon the case. *Salazar I*, Dkt. 80, at 4.

**IV.    Defendants and HTC Corp. are in privity for claim preclusion purposes, as clearly demonstrated by the evidence Salazar presented in *Salazar I*.**

Defendants and HTC Corp. are in privity for claim preclusion purposes, as shown by the agreements between Defendants, HTC Corp., and HTC America, Inc.—and the uncontradicted trial testimony about their relationships and the HTC Smartphones. Dkt. 27, at 10-12. Salazar has not disputed the relevance, accuracy, or reliability of any of this evidence. Instead he presents four circular, contradictory arguments, all premised on positions of HTC Corp. in *Salazar I*.

All four arguments rely on re-attributing arguments made by HTC Corp. to Defendants using Salazar's mistaken vision of judicial estoppel, as discussed above. Salazar thus attempts to use HTC Corp's arguments to show a lack of privity, even though he admits that his arguments are only relevant if HTC Corp. <u>is in privity</u> with Defendants. Dkt. 40, at 6 n.7. All four arguments fail: besides their circularity, none of them disprove or effect the privity established by the Motion.

---

[5] Plaintiff's reliance on *Rimkus Consulting Grp., Inc. v. Cammarata* is misplaced. *See* 688 F.Supp.2d 598 (S.D. Tex. Feb. 19, 2019). In that case, the defendant destroyed emails known to be relevant to the case, and the Court expressly found that defendant had therefore spoliated evidence. *Id.* at 642-44. In contrast, the evidence that Salazar complains was "spoliated" was actually produced by HTC Corp. and used by Salazar in the trial.

First, Salazar argues that HTC Corp. "tacitly admitted" that he could not join the carriers in *Salazar I*. Dkt. 40, at § II.A.2.a. No such admission, tacit or otherwise, was ever made. Instead, Salazar misjoined a party who was neither a buyer nor a seller of the HTC Smartphones in *Salazar I*. *See Salazar I*, Dkt. 80 at 4. In fact, Salazar was free at all times to join any of the Defendants in *Salazar I*. *See* Dkt. 27, at 12. He was just not at liberty to add unrelated third parties who had no role in making, using, or selling the HTC Smartphones, which is what he tried with AT&T, Inc.

Second, Salazar argues that HTC Corp. "attempted to conceal" the relationships with Defendants. Dkt. 40, at § II.A.2.b. Even if it were true, which it is not, this argument would not affect privity in any way. And Salazar actually presented the contracts that he now accuses HTC Corp. of "concealing" as exhibits <u>in front of the jury at trial</u>. *See supra*, at III.

Third, Salazar argues that HTC Corp. made strategic decisions that "further[ed] its own interests at the expense of Defendants," for example by "withdrawing" its invalidity counterclaim at trial, which Salazar argues may leave Defendants "open to liability for infringement in a subsequent lawsuit." Dkt. 40, at § II.A.2.c. Salazar is wrong on two points: first, HTC Corp.'s counterclaim was never withdrawn and, in fact, remains pending before Chief Judge Gilstrap. *See Salazar I*, Dkt. 299. Second, because claim preclusion and the *Kessler* doctrine bar Salazar's claim here, HTC Corp.'s decision to accept the jury's verdict is in no way detrimental to anyone, even though it did not answer the question on invalidity.

Fourth, Salazar argues that judicial estoppel should bar Defendants from arguing they are in privity with HTC Corp., based on the severance of AT&T, Inc., in *Salazar I*. Dkt. 40, at § II.A.2.d. Again, because the Court did not accept as true any argument made by HTC Corp. regarding its relationships with Defendants, judicial estoppel does not apply. *See supra*, § II.

Salazar also argues that the Federal Circuit has held that manufacturers are not <u>typically</u> in privity with purchasers of a product. Dkt. 40, at 11-12. But Defendants are not mere purchasers of HTC Corp.'s phones, as demonstrated in Defendants opening brief. *See* Dkt. 27, at 10-12. Indeed, courts across the country repeatedly have found that manufacturers are in privity with their distributor customers. *See* Dkt. 27, at 10 Nevertheless, Salazar points to *Southern Snow*, a case that is inapplicable to the facts here. *See S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 567 F. App'x 945, 959-61 (Fed. Cir. 2014). There, the Federal Circuit refused to find a manufacturer and distributor in privity, reasoning that the distributors were "persons who bought the allegedly infringing goods from the [plaintiffs] and, <u>without more</u>, cannot be considered in privity with the [plaintiffs]." *Id.* at 960 (emphasis added). But in that case, the district court's sole basis for finding privity between the manufacturer and its distributor was a bare statement that "[distributors] are in an express legal relationship with the [plaintiffs] by virtue of the distributorship," with no further analysis of what that legal relationship was, or any other facts relating to their relationship. *Id.* And so the Federal Circuit reversed the district court, and found a lack of privity on that basis.

In contrast to the facts of *Southern Snow*, Defendants have presented uncontroverted evidence from the Court's docket proving the design, marketing, sale, and distribution relationships between Defendants and HTC on the HTC Smartphones. Dkt. 27, at 10-12. These facts are the "something more" that establishes privity between Defendants and HTC Corp. for claim preclusion purposes. *See* Dkt. 27, at 10 ("Courts have frequently found that claim preclusion extends to distributors and customers of the parties to the original case")

**V.      The *Kessler* doctrine applies to pre-judgment activity and precludes Salazar's claim.**

The *Kessler* doctrine is not limited to post-judgment activity, as Salazar posits. It extends to bar re-litigation like what Salazar seeks here, as well as any future lawsuits by Salazar against consumers and any other claim he may bring.

Specifically, the *Kessler* doctrine extends the claim- and issue-preclusion doctrines to prevent plaintiffs from exploiting potential holes in those doctrines to repeatedly sue downstream customers of manufacturers who have obtained a judgment of noninfringement. *SpeedTrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1328 (Fed. Cir. 2015). As the Federal Circuit explained,

> the Kessler doctrine is a necessary supplement to issue and claim preclusion: without it, **[1]** a patent owner could sue a manufacturer for literal infringement and, if unsuccessful, file suit against the manufacturer's customers under the doctrine of equivalents. **Or, [2]** a patent owner could file suit against the manufacturer's customers under any claim or theory not actually litigated against the manufacturer as long as it challenged only those acts of infringement that post-dated the judgment in the first action. That result would authorize the type of harassment that the Supreme Court sought to prevent in *Kessler* . . .

*Id.* (emphasis added).

In the Federal Circuit's example **[1]**, the plaintiff would be evading issue preclusion by exploiting a possible lack of privity between the manufacturer and a customer and suing on a ground not clearly subject to issue preclusion. In the Federal Circuit's example **[2]**, the plaintiff would be evading claim preclusion from the first lawsuit by accusing acts that post-dated the judgment, and thus would not traditionally be subject to claim preclusion. The *Kessler* doctrine applies to both forms of abuse, and it has never been limited to only the second.

The Federal Circuit did not limit the *Kessler* doctrine to post-judgment activity in *SimpleAir, Inc. v. Google LLC*. 884 F.3d 1160, 1170 (Fed. Cir. 2018). In that case, defendant Google sought to apply the *Kessler* doctrine based on a prior lawsuit (that also named Google as a defendant) to preclude a claim on different (but related) patents asserted against the same products as in the prior lawsuit. *Id.* at 1163-64. Because the defendants were the same in both cases, there was no privity gap for the *Kessler* doctrine to fill, as in the first example cited above from *SpeedTrack*. Instead, the *Kessler* doctrine was invoked to supplement claim preclusion and reach post-judgment activity, as in the second example cited above from *SpeedTrack*.

9

The Federal Circuit ruled that, because the district court did not analyze whether the unasserted patents were substantially the same as those previously litigated, no form of preclusion applied to plaintiff SimpleAir. *Id.* at 1170. The Court further expressly held that, if on remand, the district court found that the related patents were substantially the same as those in the prior lawsuit, claim preclusion would bar claims regarding pre-judgment activity, and the *Kessler* doctrine would bar post-judgment activity, fully barring SimpleAir's claim. *Id.* at 1169-70. Because claim preclusion would serve to bar claims for pre-judgment activity, the Court reasoned that the *Kessler* doctrine did not apply "to activity predating the earlier judgment, as [defendant] advocates here," that is, where claim preclusion was available to bar the pre-judgment activity. *Id.* The Court did not, as a general rule, limit the *Kessler* doctrine to solely post-judgment activity.

Contrary to the opposition, the Federal Circuit has applied *Kessler* to pre-judgment activity in, *e.g.*, *MGA, Inc. v. General Motors Corp.*, 827 F.2d 729, 735 (Fed. Cir. 1987) ("MGA had its day in court with a full trial on the merits of its case. . . Hence, the judgment of the district court [applying the *Kessler* doctrine] is affirmed"). There, the patentee sued a manufacturer for violating a license agreement due to nonpayment of royalties on some models. *Id.* at 731. The manufacturer won with a final judgment in 1983. *Id.* The same year, the patentee sued the manufacturer's customer for infringement of the same patent. *Id.* The Court ruled that *Kessler* fully immunized the customer from suit, without any temporal limitation on the immunity. *Id.* at 734-35. That is, the *Kessler* doctrine was not limited merely to post-judgment activity. *Id.*

The *Kessler* doctrine is not limited to post-judgment activity, but it does bar litigation like this where the patentee seeks to avoid an adverse judgment in a prior lawsuit to harass a noninfringer's customers. Even if the Court determined that an element of claim preclusion were insufficient here, the *Kessler* doctrine exists to fill that gap and bar Salazar's repetitive litigation.

| | |
|---|---|
| Dated: November 20, 2019 | Respectfully submitted,<br><br>*/s/ Fred I. Williams*<br>Fred I. Williams<br>Texas Bar No. 00794855<br>fwilliams@velaw.com<br>VINSON & ELKINS LLP<br>2801 Via Fortuna, Suite 100<br>Austin, Texas  78701<br>Tel:  512.542.8400<br>Fax: 512.542.8610<br><br>Todd E. Landis<br>Texas Bar No. 24030226<br>tlandis@velaw.com<br>VINSON & ELKINS LLP<br>2001 Ross Avenue, Suite 3700<br>Dallas, TX  75201<br>Tel:  214.220.7700<br>Fax: 214.220.7716<br><br>Parker Hancock<br>Texas Bar No. 24108256<br>phancock@velaw.com<br>VINSON & ELKINS LLP<br>1001 Fannin Street, Suite 2500<br>Houston, TX  77002-6760<br>Tel:  713.758.2222<br>Fax: 713.758.2346<br><br>Harry Lee Gillam, Jr.<br>State Bar No. 07921800<br>gil@gillamsmithlaw.com<br>GILLAM & SMITH, LLP<br>303 South Washington Avenue<br>Marshall, Texas   75670<br>Tel:  903.934.8450<br>Fax: 903.934.9257<br><br>*Attorneys for Defendants* |

## **CERTIFICATE OF SERVICE**

  I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 20th day of November, 2019, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

                */s/ Fred I. Williams*